```
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                        CENTRAL DIVISION
```

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:10CR00104 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER ADDRESSING MOTION TO SUPPRESS EVIDENCE |
| JOSE ASTORGA, | ) | |
| | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Defendant Jose Astorga moves to suppress evidence seized from a vehicle he was driving after it was stopped on January 4, 2010. He asserts that his Fourth Amendment rights were violated when officers conducted an illegal warrantless search for evidence of criminal activity under the pretext of an improper inventory search of the vehicle he was driving when stopped for improper registration. An evidentiary hearing was held, followed by post hearing briefing.

These are the relevant facts. On January 4, 2010, at approximately 8:00 a.m. Utah Highway Patrol ("UHP") Trooper Jared Allen Jensen was stationed in the center median on I-15 approximately six miles south of Nephi, Utah, where he observed a gold-colored Chevy SUV traveling 73 mph in a 75 mph zone. Upon seeing the patrol car, the SUV slowed down immediately to 60 mph, and as it passed by him, Trooper Jensen observed that the driver

had an extremely tight grip on the steering wheel, was looking straight ahead, and would not make eye contact with him. Trooper Jensen caught up with the SUV and on his computer ran a registration check. The SUV came back as having a suspended registration out of California. He confirmed his finding through dispatch which uses a different system.

Trooper Jensen stopped the SUV and approached the driver, identified as Jose Astorga, the defendant. Defendant appeared tired and disheveled. His speech was slow and garbled. The inside of the vehicle was messy.

Because neither Defendant nor the passenger spoke English, Trooper Jensen, who speaks Spanish, addressed them in Spanish. Defendant was not able to produce a driver's license nor proof of insurance. He did produce an expired California identification card. Dispatch reported that he had multiple previous arrests, several of which were for possession of a controlled substance, and a deportation. Trooper Jensen called for a backup officer.

When Juab County Deputy Sheriff Craig Ryan arrived, Trooper Jensen informed Defendant and Ms. Garcia, his passenger and listed owner of the SUV, that he was going to impound the vehicle for improper registration. They exited the vehicle and were patted down, but were not arrested. They were told to stand in front of the SUV while Trooper Jensen and Deputy Ryan began an inventory search of the vehicle.

2

During the inventory search of the vehicle Trooper Jensen found a package, wrapped in multiple layers of plastic bags followed by aluminum foil, in the pocket of a green coat on the back seat. The contents, which Trooper Jensen recognized as either cocaine or methamphetamine, "nik" or field tested positive as methamphetamine. Trooper Jensen then contacted his sergeant by telephone and requested that he come to the scene because of the methamphetamine discovery.

Trooper Jensen testified that he used a hand notepad as he was doing the inventory and later filled out a UHP Vehicle Impound Form which has a time notation of 12:00. Trooper Jensen testified that it is his practice to fill out the impound forms later, after he has taken his own notes during the inventory. The SUV was taken to the Sheriff's Office and placed in a sally port where the inventory was concluded. Trooper Jensen identified Exhibit C as the UHP policy and procedures which govern vehicle impounds.

Both Defendant and Ms. Garcia were arrested after controlled substances were found in the SUV.

## II. DISCUSSION

**A. Initial Stop.**

Although, raised in his Motion, Defendant has presented no argument or analysis regarding the validity of the initial stop.

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred,

3

or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), *cert. denied*, 129 S. Ct. 2881 (2009). The officer's subjective motives are irrelevant and the Court examines only whether the stop was objectively justified. *White*, 584 F.3d at 945.

During a routine traffic stop, an officer may request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings. *United States v. Williams*, 271 F.3d 1262, 1267-68 (10th Cir. 2001). And an officer may ask questions unrelated to the reason for the stop as long as the questioning does not extend the length of the detention. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006).

Driving a vehicle with a suspended registration is a violation of Utah law and a valid basis for the traffic stop. See Utah Code Ann. § 41-1A-1303.

### B. Validity of Inventory Search.

Although Defendant acknowledges that "Trooper Jensen may have had a legal basis to impound the vehicle", Mem. Supp. at 12, he asserts that the vehicle inventory search was not conducted in conformance with written UHP policies, and was a pretext to search for incriminating evidence. Specifically, he contends that Trooper

4

Jensen "failed to assign a case number prior to the search, made no notes of the property in the vehicle, and did not employ the UHP Vehicle Inventory Form when conducting the so-called inventory search at 8:30 a.m." Mem. Supp at 14.

An inventory search is an exception to the warrant requirement of the Fourth Amendment. "Police may inventory impounded property to avoid liability for missing items. *Colorado v. Bertine*, 479 U.S. 367, 372 ... (1987), '[R]easonable police ... inventory procedures administered in good faith satisfy the Fourth Amendment.' *Id*. at 374". *United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir.), *cert. denied*, 130 S. Ct 3339 (2010). "An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory." *United States v. Haro-Salcedo*, 107 F.3d 769, 772-73 (10th Cir.1997)(citation omitted). *But cf. United States v. Moraga*,76 Fed. Appx. 223, *6 (10th Cir. July 28, 2003)(not selected for publication, No. 02-2322), *cert. denied*, 540 U.S. 1082 (2003)(citing *United States v. Frank*, 864 F.2d 992, 1001 (3d Cir. 1988)("an inventory search is not rendered unconstitutional simply because it also had an investigatory purpose provided that is not the sole purpose"); *United States v. Garner*, 181 F.3d 988, 991 (8th Cir. 1999)(citing *United States v. Lewis*, 3 F. 3d 252, 254 (8th Cir. 1993)), *cert. denied*, 528 U.S. 1119 (2000)("[t]he presence of an

5

investigative motive does not invalidate an otherwise proper inventory search"); *United States v. Smith*, 510 F.3d 641,651 (6th Cir. 2007)("the mere fact that an officer suspects that contraband may be found in a vehicle does not invalidate an otherwise proper inventory search").

UHP impound procedure provides in relevant part as follows. "When a vehicle is taken to any police parking lot, impound lot or to any commercial storage lot, a case number shall be assigned and a written inventory shall be made of the contents of the vehicle, the trunk and any open or closed package, container or compartment." Def's Ex. C, p. 3, ¶ IV A. The Court agrees with the United States that "[n]othing in this [impound] policy prohibits the officer from obtaining his own inventory of the vehicle that can be transferred to the form later or which requires a case

number be assigned 'immediately'". Mem. Opp'n at 14.[1] The Court is satisfied that the United States has established that Trooper Jensen acted in good faith in administering UHP inventory procedures. He testified that he kept contemporaneous notes while conducting the inventory. He later used those notes to complete the required Inventory Form. And he assigned it a case number. *See* Def's Ex. B. Defendant's claim of pretext is undermined by the uncontroverted fact that the vehicle was lawfully subject to impound for improper registration and applicable procedures were followed in good faith. Merely because Trooper Jensen also may have had an investigative motive based on generalized suspicions of criminal activity, it cannot be said under the facts presented, that such was his sole or primary motive. Because he had the legal

---

[1] It is not entirely clear whether Defendant also complains that UHP policy as it relates to the Utah State Tax Commission impound report was not followed. See Mem. Supp. at 13. To the extent he makes such an argument, it is rejected. In relevant part, UHP procedures further provide:
> When a vehicle is impounded for improper registration ... , the officer shall immediately complete a Utah State Tax Commission impound report, place the Commission copy in the appropriate envelope and mail to the State Tax Commission. After the impound report has been mailed, the officer shall not authorize the release of the vehicle without the express consent of the State Tax Commission.

Def's Ex. C, p. 4, ¶ D. The Court agrees with the United States that the term "immediately" cannot be construed so as to suggest an officer must, without any reasonable accommodation to the task at hand, complete and post the appropriate report. As discussed herein, the evidence reflects that Trooper Jensen followed impound procedures in good faith.

right to impound the vehicle, and followed applicable procedures in good faith, the evidence was lawfully seized pursuant to an inventory search. *See* supporting authority *supra*.

Because the Court decides that Defendant's Fourth Amendment claim lacks merit, it need not, and does not address whether Defendant has standing to challenge the search or whether the inevitable discovery doctrine applies as argued by the United States in opposing the present Motion.

### III.  CONCLUSION

For the reasons set forth, Mr. Astorga's Motion to Suppress (Doc. # 10) is denied.

IT IS SO ORDERED.

DATED this 28th day of September, 2010.

BY THE COURT:

*[signature: David Sam]*
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT